**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAPHIA WILLIAMS, GREGORY COOPER, | ) | |
| JOSHUA ATWATER, MARCUS JOHNSON, | ) | |
| XAVIER WEBSTER, and TONY MASON, | ) | |
| Individually and on behalf of those | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No.: 18-cv-1456 |
| | ) | |
| vs. | ) | Judge: Harry D. Leinenweber |
| | ) | Magistrate: M. David Weisman |
| | ) | |
| COOK COUNTY, and | ) | |
| COOK COUNTY SHERIFF TOM DART, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

1. This is an action for declaratory and injunctive relief and for money damages brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiffs' state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

4. Plaintiffs Taphia Williams, Gregory Cooper, Joshua Atwater, Marcus Johnson, Tony Mason, and Xavier Webster are African American residents of Chicago, Illinois who are facing felony criminal charges in Cook County.

5. Defendant Cook County Sheriff Tom Dart is the duly appointed and sworn Sheriff of Cook County.

1

6. Defendant Dart is sued in his individual capacity and in his official capacity as the final policy maker for all relevant policies related to pre-trial incarceration at the Cook County Jail, posting bond, and electronic monitoring implemented by Cook County Sheriffs.

7. Plaintiffs join Cook County, Illinois, pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003). The operations of the Cook County Jail are ultimately the financial responsibility of Cook County.

## Introduction

8. This lawsuit is brought by a group of Plaintiffs, individually and on behalf of those similarly situated, who were detained by Cook County Sheriff Tom Dart ("the Sheriff" or "Dart") at the Cook County Jail long after their bonds were posted, pursuant to Dart's new policy of detaining individuals even after their bonds are posted to conduct his own "review" of bond decisions made by Cook County Judges ("the policy").

9. Pursuant to this policy, when Dart determines the bonds set by Cook County Judges in various cases are not appropriate he refuses to release those inmates from custody.

10. Plaintiffs are all individuals who face felony criminal charges in Cook County, who were given full bond hearings by Cook County Judges, who posted the required monetary bond to be released, who were ordered to be released on electronic monitoring by Cook County Judges, but whom Sheriff Dart refused to release for an unreasonable period of time.

11. Dart has no legal authority to over-ride bond decisions by Cook County Judges and no legal authority to refuse to comply with valid bond orders. Plaintiffs' bring this suit challenging their detentions pursuant to Dart's bond-review policy, contending they were detained in violation of the United States Constitution and Illinois law.

## Dart's Policy

12. Pursuant to the Illinois bond statute, a judge has the exclusive authority to determine an appropriate bond for a pre-trial defendant after giving full consideration to a multitude of factors enumerated in the bond statute. 725 ILCS 5/110-5 (West 2018).

13. The statute requires that any non-monetary conditions of release imposed by the court shall be "the least restrictive conditions or combination of conditions necessary to reasonably

assure the appearance of the defendant for further court proceedings and protect the integrity of the judicial proceedings." (Id.)

14. The bond statute further makes clear that court-ordered conditions of release may include: "electronic home monitoring, curfews, drug counseling, stay-away orders, and in-person reporting." (Id.)

15. The bond statute mandates that the court consider the defendant's socio-economic circumstances when setting conditions of release or imposing monetary bail. (Id.)

16. A bond determination issued by a judge constitutes a court order that the defendant be released in accordance with the conditions set forth in the order.

17. As stated by Dart, in briefing filed in the case of Zachery Robinson v. Leroy Martin Jr., "settled law set forth by the Illinois Supreme Court, the First District and the Seventh Circuit establishes that Sheriff Dart cannot refuse to execute or modify a facially valid court order." 2016 CH 13587 (Ex. A - 1/13/17 Mot. To. Dismiss, p. 7.)

18. Sheriff Dart's duties are codified at 55 ILCS 5/3-6019 and 3-6020. Section 3-6019 states in relevant part: "Sheriffs shall serve and execute, within their respective counties, and return, all warrants, process, orders and judgments of every description that may be legally directed or delivered to them." 55 ILCS 5/3-6019.

19. Not only does Illinois law require that Sheriff Dart execute all court orders legally directed to him, but also provides that the Sheriff may be punished for failure to do so. Section 3-6020, which deals with the consequences of a sheriff failing to execute a facially valid court order, states: "the disobedience of any sheriff to perform the command of any warrant, process, order or judgment legally issued to him or her, shall be deemed a contempt of the court that issued the same, and may be punished accordingly; and he or she shall be liable to the party aggrieved for all damages occasioned thereby." 55 ILCS 5/3-6020.

20. This case arises because in February 2018, instead of complying with lawful, binding court orders granting pre-trial defendants bond, Sheriff Dart began unilaterally detaining certain individuals at the Cook County jail long after their bonds had been posted, so he could review the bond decisions made by Cook County Judges. In many of the cases Dart "reviewed," he felt the bond set by the judge was too lenient and refused to release the individual from custody. The

3

Sheriff ultimately released some of the detainees, but he held them for an unreasonable period of time (several days and in some cases weeks) before releasing them.

21. Sheriff Dart's policy of conducting his own reviews of bond decisions arose out of his dissatisfaction with recent bond reform efforts in Cook County and his disagreement with bonds being set by Cook County Judges.

22. Specifically, in the days surrounding the implementation of the policy, Sheriff Dart and his Chief Policy Officer Cara Smith made statements in writing and orally to the media expressing disagreement with recent bond reform efforts in Cook County. Dart specifically criticized the increased number of people who were being released prior to trial who were charged with gun related offenses because of Chief Judge Tim Evans' affordable bail order, which requires judges to issue bond amounts only within the range of what defendants can afford to pay. (Ex. B, News articles.)

23. Additionally, Dart expressed his view that too many individuals with "serious" crimes or individuals with criminal background were being released on bond and electronic monitoring. Dart claimed that these individuals were likely to re-offend and posed a public safety risk. (Id.)

24. Dart took the position that those individuals should be incarcerated pretrial notwithstanding the orders of bond court judges who had conducted a bond hearing and determined that they were eligible for release. (Id.)

25. In light of Dart's concerns, he announced that it would be his new policy to have his administration conduct "reviews" of certain individuals' bond orders and that his office would be refusing to release individuals when they disagreed with the bond orders set by the court. (Id.)

26. For example, in a February 22, 2018, letter Dart sent to Toni Preckwinkle, the President of the Cook County Board of Commissioners, Dart articulated his belief that as a result of recent bond reform efforts, too many individuals were being given low bonds or are being put on electronic monitoring and that those individuals were likely to re-offend and posed a threat to public safety. (Ex. C, Letter to Preckwinkle.)

27. In his letter, Dart referred to data collected by his office that suggested that more people with gun cases, whom he descried as "violent" and "dangerous" were receiving lower bonds or electronic monitoring than prior to the reforms. (Id.)

28. In that same letter, Dart indicated that as a result of these concerns, "moving forward" his office would enact a new policy whereby he would "closely scrutinize all individuals who are assigned to E.M. by carefully reviewing their charges and criminal histories, a process that may take up to 48 hours." Dart went on to state that "those who are deemed to be too high a security risk to be in the community will be referred back to the court for further evaluation." (Id.)

29. Notably, in **none** of the cases impacted by this policy known to counsel were the individuals held for only 48 hours – all were held much longer. Moreover, in none of the cases known to counsel did the sheriff take any steps to have the case "referred back to the court" for further evaluation, nor did he take any steps to inform the detainees' counsel of what was occurring.

30. In fact, in the vast majority of cases known to counsel, the Sheriff took no efforts to inform the detainees, their families, or their counsel of record that they were even being detained pursuant to this policy so that prompt steps could be taken to remedy it. Instead, counsel and families were left to call various officials at the Cook County Jail to figure out what was going on. Then counsel were required to file motions to bring the case back before criminal court judges, which requires serving the Sheriff and giving notice to the state—a process that takes days.

31. As county president Toni Preckwinkle stated in her February 26, 2018 response letter to Dart, his own data that he relied upon in trying to justify his actions do not actually support his position. Sheriff Dart insists that individuals are getting lower bonds than they were in the past, but fails to articulate how those individuals are "dangerous" or likely to re-offend. (See, Ex. D, Preckwinkle Response.)

32. As President Preckwinkle aptly pointed out, based on Dart's own data, most individuals charged with gun offenses do not re-offend while awaiting trial. (Id.) Of the 195 defendants accused of possessing guns who have been released into the community since the bond reforms took place, only 21 were rebooked for any offense, and only 5 (2.5 percent) were arrested for a felony gun charge. (Id.)

33. Additionally, Preckwinkle noted, "overall felony gun charges have remained constant pre and post September 18, 2017, when the bond reforms were implemented. Thus far, no increased threat to public safety has emerged from the bond reform as it relates to gun offenses." (Id.)

34. Data from The Chicago Community Bond Fund ("CCBF"), a 501(c)3 organization that posts bond for people in Cook County who cannot afford to pay their own monetary bond, shows that out of the 32 people with charges involving guns that they posted bond for since 2015, 97 percent of them have returned to all their court dates and have not been re-arrested. None were re-arrested on new charges involving weapons.

35. Moreover, Cook County Chief Judge Evans' Office has reported that about 82 percent of all pretrial defendants (16,599 of 20,243) who had been released from October 1, 2015 through March 31, 2017 were not charged with a new crime while their case was pending through December 31, 2017. When this figure is isolated to defendants who had a weapon related charge as their top charge, 79 percent (1,182 of 1,486) were not charged with a new crime while their case was pending. In that same period, 97 percent of the defendants released (19,657 of 20,243) did not have a violence flag in their pretrial assessment score. Moreover, out of 20,243 defendants released while their case was pending, 151 (0.7 percent) were charged with a new violent crime.

36. On the evening of February 27, 2018, five days after Dart's original letter to Preckwinkle, and one day after this lawsuit was filed, Dart's office sent an email to Amy Campenelli, the Cook County Public Defender, indicating that pursuant to his new policy and his own "review" of the bond decisions, he was still refusing to release eight inmates because he does not agree with the bond set by the Judges based on his own "research" into the individuals' charges and criminal backgrounds. (Ex. E – Dart Email.)

37. Notably, only one of the eight individuals on the list Dart provided to Campenelli was represented by the office of the public defender.

38. The following day, on February 28, 2018, Cara Smith, Sheriff Dart's Chief Policy Officer, made a statement to the Chicago Tribune that suggested Dart's policy was motivated in part by the race of the detainees who were ordered released on electronic monitoring. In particular, Smith raised concerns about individuals charged with "gun cases" who come from Chicago's "most violent neighborhoods." (Ex. B.)

39. This echoed racist, fear mongering sentiments Smith previously expressed to the media, including a statement to the Chicago Tribune on February 26, 2018, in which she indicated that "the office will more thoroughly review" individuals' bonds who were ordered to be released on

electronic monitoring back to the "violence-plagued neighborhoods on the South and West sides." (Ex. B.)

40. Subsequently, Sheriff Dart sent an email to the State's Attorney's office indicating that more than 55 individuals were being detained pursuant to Dart's new policy. (Ex. F. – Email to SA.)

41. Sheriff Dart's statement that people from the South and West sides of Chicago—primarily African Americans—are to be the most closely scrutinized shows that Dart's policy of refusing to release certain detainees is motivated by racial bias and racist assumptions about the likelihood that people from primarily African American neighborhoods pose a public safety risk or are likely to reoffend.

42. People facing criminal charges in this country are presumed innocent. In making an assumption about someone's level of dangerousness based on the nature of the charges they face, or the neighborhood they come from (which in Chicago are divided along racial lines), Dart is playing judge and jury—a disturbing overstep of his powers as Sheriff.

43. Moreover, felony cases in Cook County regularly take more than a year to resolve, and some people wait three or more years for their trial. Dart's refusal to release an individual pre-trial will have dire consequences for individuals facing pre-trial incarceration, many of whom may eventually be found not guilty of all charges.

44. Dart's policy is unconstitutional in that it holds individuals in pre-trial detention without legal justification, even though a judge has conducted a full bond hearing, made a judicial determination about bond, and issued a facially valid bond order, and the bond has been posted.

45. Dart's policy also usurps the power of the judiciary, violates separation of powers, and sets a dangerous president that a Sheriff can refuse to execute lawful orders and/or can effectively overrule a binding judicial order.

46. Dart's policy is also unconstitutional because it disproportionately targets African Americans by using charge, prior arrests, and neighborhood to determine eligibility for release, and because Dart's review process (even if he had authority to conduct a review, which he does not) fails to provide any procedural due process safeguards to the individuals impacted by the policy.

7

## Named Plaintiffs

47. Each of the named Plaintiffs was detained without lawful justification in violation of their rights under the United States Constitution and under Illinois State law pursuant to Dart's unconstitutional policy.

### *Taphia Williams*

48. Taphia Williams was processed into the Cook County Jail on September 15, 2017 for felony criminal charges, case number: 17 CR 1491202.

49. On October 31, 2017, Judge O'Brien reduced Ms. Williams' bond to $50,000 D with electronic monitoring as a condition of bond. This meant, that if $5,000.00 was posted on behalf of Ms. Williams, she was to be released on electronic monitoring.

50. At 6 p.m. on Friday, February 23, 2018, an agent of The Chicago Community Bond Fund ("CCBF"), posted $5,000 in bond for Taphia Williams in anticipation that she would be released from Cook County Jail and placed on electronic monitoring at her uncle's home. Sheriff Dart refused to release Taphia Williams pursuant to his policy.

51. More than 60 hours after her bond had been posted, in the early afternoon of February 26, 2018, an agent of the Chicago Community Bond Fund called the records department at Cook County Jail to inquire why Ms. Williams had not yet been released. He was told that she was being held because of Dart's new policy, pursuant to which he was personally conducting his own administrative review of individuals with "serious charges" who were being released on bond to determine if he approved their release or not. He was further told that numerous individuals were on this list to be reviewed by Dart. (Ex. G – Affidavit of CCBF representative.)

52. After the filing of this lawsuit on the evening of February 26, 2018, Ms. Williams was released from custody in the early morning hours of February 27, 2018.

53. In total, Plaintiff Williams spent more than 72 hours in custody after her bond was posted.

### *Gregory Cooper*

54. Plaintiff Gregory Cooper is facing felony criminal charges in Cook County.

55. On February 16, 2018 Judge Atcherson set a $10,000 D bond with the condition of electronic monitoring on Cooper's underlying case 18-110271901. On February 21, 2018, Judge Gainer set a $5,000 D bond with the condition of electronic monitoring on Coopers violation of bail bond case. This meant, that if $6,000 was posted on behalf of Cooper he was to be released on electronic monitoring.

56. Both of Cooper's bonds were posted on February 24, 2018. Sheriff Dart refused to release Cooper pursuant to his policy.

57. As of the filing of the First Amended Complaint on February 28, 2018, Cooper remained in custody even though his bond had been fully posted.

58. On March 6, 2018, this Court denied Plaintiff Cooper's motion for a Temporary Restraining Order without prejudice.

59. Counsel immediately filed a Motion for Rule to Show Cause in state criminal court as to why Sheriff Dart should not be held in contempt of Court for failing to comply with the bond order to release Cooper on bond.

60. Due to the realities of the Cook County Criminal Court system, it took eight days and three filings before Gregory Cooper's case was set to be heard at 9:00 a.m. on March 7, 2018, on the motion for Rule to Show Cause in Branch 50. In an effort to make the Rule to Show Cause motion moot, Sheriff Dart released Gregory Cooper in the middle of the night (around 4:00 a.m. on March 7, 2018), and he walked into court that morning at 9:00 a.m.

61. In total, Gregory Cooper was unlawfully detained for more than 11 days after his bonds were posted.

62. Since Cooper has been released on electronic monitoring, Sheriff Dart's office indicated in an email to the State's Attorney that in retaliation for being forced to accept Cooper on electronic monitoring, they will not be approving any requests for movement. (Ex. F.)

*Tony Mason*

63. Plaintiff Tony Mason is facing felony criminal charges in Cook County, case number 18 CR 403701.

64. On February 26, 2018, Mason was processed into the Cook County Jail.

9

65. On the same day, Judge Navarro set Mason's at $75,000 D by with electronic monitoring as a condition of bond. This meant, that if $7,500.00 was posted on behalf of Mason he was to be released on electronic monitoring.

66. Mason's bond was posted on February 26, 2018. Sheriff Dart refused to release Mason pursuant to his policy.

67. Counsel immediately sought relief in criminal court.

68. Due to the realities of the Cook County Criminal Court system, it took nine days and two filings before Mason's case was set to be heard at 9:00 a.m. on March 7, 2018, on a motion for Rule to Show Cause. In an effort to make the Rule to Show Cause motion moot, Sheriff Dart released Mason in the middle of the night at around 4:00 a.m. on March 7, 2018, and he walked into court that morning at 9:00 a.m. (Ex. H – Mason order.)

69. In total, Mason was unlawfully detained for more than 9 days after his bond was posted.

70. Since Mason has been released on electronic monitoring, Sheriff Dart's office indicated in an email to the State's Attorney that in retaliation for being forced to accept Mason on electronic monitoring, they will not be approving any requests for movement. (Ex. F.)

*Marcus Johnson*

71. Plaintiff Marcus Johnson is facing felony criminal charges in Cook County, case number 18 CR 0435701.

72. On February 25, 2018, he was processed into the Cook County Jail.

73. On the same day, Judge Navarro set his bond at $3,000 D with electronic monitoring as a condition of bond. This meant that if Johnson posts $300 he is to be released on electronic monitoring.

74. At 6:25 p.m. on February 25, 2018, Johnson's father posted his bond. Sheriff Dart refused to release Johnson pursuant to his policy.

75. After multiple phone calls with Johnson's criminal attorney and after Johnson's criminal attorney threatened to file a Motion for Rule to Show Cause, Sheriff Dart finally agreed to release Johnson on March 9, 2018.

76. In total, Johnson was unlawfully detained for more than 12 days after his bond was posted.

77. Johnson is 18 years old and was in his senior year of high school at the time of his arrest. Because of Dart's unlawful detention, Johnson was kicked out of school for missing too many days and deemed ineligible for graduation. Johnson has been forced to enroll in an alternative school to complete his high school degree.

*Xavier Webster*

78. Plaintiff Xavier Webster is facing felony criminal charges in Cook County, case number 18 CR 0429401.

79. Plaintiff was processed into the Cook County Jail on February 28, 2018.

80. The same day, Judge Navarro set Webster's bond at $10,000 D with electronic monitoring as a condition of bond. This meant that if Webster posts $1,000 he is to be released on electronic monitoring.

81. On March 1, 2018, Webster's family posted his bond. Sheriff Dart refused to release Webster pursuant to this policy.

82. The next day, Webster's father began calling the jail to figure out why his son was not being released. He was given the number of Cara Smith, Sheriff Dart's Chief Policy Officer. After talking and texting for days with Smith, asking that his son be released, the Sheriff finally agreed to release Webster on March 9, 2018.

83. In total, Webster was unlawfully detained for more than 9 days after his bond was posted.

*Joshua Atwater*

84. Plaintiff Joshua Atwater is also facing criminal charges in Cook County, case number 17 CR 0268401.

85. On December 6, 2016 Atwater was processed into the Cook County Jail.

86. On the same day, Judge Panarese set Atwater's bond at $100,000 D with electronic monitoring in lieu of bond. This meant Atwater was to be released on electronic monitoring without the need to post any money.

87. The following day, Mr. Atwater was admitted to the Sheriff's electronic monitoring program and was released on electronic monitoring to his home with his wife and five young children.

88. On February 21, 2018, Mr. Atwater was taken into custody for missing court based on a misunderstanding about his court date.

89. On March 6, 2018, Judge Flood reinstated Mr. Atwater's bond with the same conditions that were previously set, including that he be given electronic monitoring in lieu of posting bond.

90. Despite having previously been on electronic monitoring for over a year, Sheriff Dart refused to release Atwater on electronic monitoring upon being re-booked into the jail pursuant to his policy.

91. On March 12, 2018, Plaintiff's counsel called counsel for the Defendants and asked that Atwater be released on electronic monitoring, indicating that if he is not released, counsel would be filing a Motion for Rule to Show Cause.

92. On the evening of March 12, 2018, Atwater was released from custody and placed on electronic monitoring.

93. In total, Atwater was unlawfully detained for more than 6 days after his electronic monitoring bond order was reinstated by the Judge.

94. Even after Atwater was released, however, Sheriff Dart has refused to release Atwater to his family home where he lives with his wife and children. Dart instead insisted that Atwater be released to his Aunt's house, adding as a condition of bond that he not have any contact with his children. This additional condition of bond was never ordered by a judge and is not in any way warranted by the nature of his case.

95. Because Sheriff Dart unilaterally decided to modify Atwater's bond order, and because Sheriff Dart is now refusing to let Atwater see his children, Atwater has not seen his children since February 21, 2018.

96. Atwater's wife is recovering from a serious illness. Because of this, Atwater has been the primary parent to their children for the past year. Atwater's absence since February 21, 2018 is devastating to Atwater and his children.

## **Class Action**

97. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of this complaint as a class action. Plaintiff seeks to represent a class consisting of: All individuals who have been

detained, are currently being detained, or in the future will be detained at the Cook County Jail, even though their bond has been posted, in violation of a facially valid and binding court order, pursuant to Dart's policy of conducting his own review of bond decisions made by Cook County Judges.

98. The Plaintiff Class seeks a declaration that Defendant Dart's policy and practice of failing to release individuals on electronic monitoring as ordered by Cook County Judges and of conducting his own review of bond decisions results in routine violations of class members' Fourth Amendment right to be free from unlawful seizures and Fourteenth Amendment Right to Equal Protection under the law and Procedural Due Process.

99. The Plaintiff Class also seeks a temporary restraining order, and ultimately a preliminary and then permanent injunction, ordering Defendant Dart to stop unlawfully detaining people who have posted their bond and to follow the binding judicial bond orders issued by Cook County judges.

100. The proposed class is numerous. The class comprises more than 55 detainees who have been held or will be held in the future at the county jail pursuant to Dart's policy. (Ex. F.)

101. In addition to the named Plaintiffs, counsel is aware of at least the following individuals who are similarly situated and were / are being unlawfully detained by Sheriff Dart pursuant to this constitutionally infirm policy, including:

- Dawante Hogn, 2017-1230014
- Kevin McKeever, 2018-0223098
- Marcell Hunter, 2018-0225170
- Herbert Wright, 2018-0223198
- Deavonte Kimble, 2018-0223210
- Dionte Hall, Case number 18 CR 200202
- Jarvis Williams, 2018-0101070
- Terrance Strickland, 2018-0302187
- Derieon Thomas, case number 17 CR 1478901

102. Sheriff Dart's policy is ongoing. Membership in the class is inherently transitory and the number of individuals impacted and potentially impacted by the policy is growing by the day.

103.    Joinder of all class members is impracticable. Not only is the class numerous but membership in the class is also constantly changing. The membership of the class changes on a weekly basis as individuals are arrested, detained, and released from custody or detained.

104.    The preeminent issues of law and fact are common to all class members, including: whether or not Dart's policy of detaining individuals after bond has been posted in order to conduct his own administrative review of the bond decision is constitutional.

105.    All individuals falling within the class definition have been subject to the same policy and practice. Given the commonality of the questions pertinent to all class members, a single injunction or declaratory judgment would provide relief to each member of the class.

106.    Defendant Dart has acted and continues to act in a manner adverse to the rights of the proposed class, including continuing to implement his policy after this lawsuit has been filed, and continuing to implement his policy after motions for rule to show cause were filed in state criminal court, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

107.    Plaintiffs and the class they seek to represent have no adequate remedy at law as fling motions in criminal court on a case by case basis is an entirely insufficient remedy for the individual as well as the class because it can at best result in the release of an individual, but it does not address the ongoing class-wide policy or prevent future individuals currently at risk of future harm from the continuation of these policies and practices.

108.    Plaintiffs will fairly and adequately represent the interests of the class and the Plaintiffs' claims are typical of the claims of all members of the proposed class.

109.    Plaintiffs' counsel is experienced in civil rights litigation, including *Monell* claims, and Fourth and Fourteenth Amendment cases and cases alleging excessive detentions. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

## COUNT I
### (42 U.S.C. § 1983 Fourth Amendment Claim for Unlawful Detention)

110.    Plaintiffs re-allege paragraphs 1 through 109 as if fully set forth herein.

111.    Defendant Dart, knowing that he had no lawful justification, caused Plaintiffs to be detained, violating Plaintiffs' right to be free from unreasonable seizures guaranteed to them by the Fourth and Fourteenth Amendments of the United States Constitution.

112.     Defendant, knowing that he had no lawful justification, enacted a policy and practice as described above, whereby he caused a group of individuals to be detained at the Cook County Jail even though their bonds had been posted.

113.     Plaintiffs were detained pursuant to Dart's unlawful policy described above.

114.     Count I is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant Dart has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole on Count I of this Complaint. Plaintiffs seek to represent a class of similarly situated individuals who are currently (or will be in the future) detained at the Cook County Jail even though their bond has been posted, pursuant to Dart's new policy of conducting his own review of bond decisions made by Cook County Judges, and seeks injunctive and declaratory relief against Defendant Dart on behalf of the class.

WHEREFORE, Plaintiffs ask that this Honorable Court:

    a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

    b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

    c) Enter judgment declaring that Defendant Dart's policies and practices described herein as applied to the class violate the Fourth Amendment of the U.S. Constitution;

    d) Enter a temporary restraining order, preliminary and then permanent injunction prohibiting Defendant Dart from continuing the unconstitutional policies and practices identified herein;

    e) Award Plaintiffs their compensatory damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable law; and

    f) Grant such other relief as this Court deems just and proper.

## COUNT II
### (42 U.S.C. § 1983 Fourteenth Amendment Claim for Equal Protection Violation)

115.     Plaintiffs re-allege paragraphs 1 through 109 as if fully set forth herein.

116.     Dart's policy disproportionately targets African Americans by using charge, prior arrests, and neighborhood to determine eligibility for release.

117.     The individuals who were unlawfully detained by Dart pursuant to this policy were almost exclusively African Americans. They were subjected to this unconstitutional policy because of their race and/or national origin. As a result, Dart's policy, practice and/or custom violates the Equal Protection Clause of the Fourteenth Amendment.

118.     Count II is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant Dart has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole on Count I of this Complaint. Plaintiffs seek to represent a class of similarly situated individuals who are currently (or will be in the future) detained at the Cook County Jail even though their bond has been posted, pursuant to Dart's new policy of conducting his own review of bond decisions made by Cook County Judges, and seeks injunctive and declaratory relief against Defendant Dart on behalf of the class.

WHEREFORE, Plaintiffs ask that this Honorable Court:

      a)   Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

      b)   Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

      c)   Enter judgment declaring that Defendant Dart's policies and practices described herein as applied to the class violate the Fourth Amendment of the U.S. Constitution;

      d)   Enter a temporary restraining order, preliminary and then permanent injunction prohibiting Defendant Dart from continuing the unconstitutional policies and practices identified herein;

      e)   Award Plaintiffs their compensatory damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable law; and

      f)   Grant such other relief as this Court deems just and proper.

## <u>COUNT III</u>
**(42 U.S.C. § 1983 Fourteenth Amendment Claim for Procedural Due Process Violation)**

119.     Plaintiffs re-allege paragraphs 1 through 109 as if fully set forth herein.

120.     Dart's policy violates the Fourteenth Amendment guarantee of procedural due process because it causes people who are entitled to be released on electronic monitoring to be detained in the Cook County Jail without any legal justification and without providing them due process of law, in direct contradiction of the order of judge who has conducted a full bond hearing, made a judicial determination about bond, and issued a facially valid bond order, and the bond has been posted.

121.     Count III is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant Dart has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole on Count I of this Complaint. Plaintiffs seek to represent a class of similarly situated individuals who are currently (or will be in the future) detained at the Cook County Jail even though their bond has been posted, pursuant to Dart's new policy of conducting his own review of bond decisions made by Cook County Judges, and seeks injunctive and declaratory relief against Defendant Dart on behalf of the class.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that Defendant Dart's policies and practices described herein as applied to the class violate the Fourth Amendment of the U.S. Constitution;

d) Enter a temporary restraining order, preliminary and then permanent injunction prohibiting Defendant Dart from continuing the unconstitutional policies and practices identified herein;

e) Award Plaintiffs their compensatory damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)   Grant such other relief as this Court deems just and proper.

## COUNT IV
### (State Law Claim for Violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5)

122.     Plaintiffs re-allege paragraphs 1 through 109 as if fully set forth herein.

123.     Defendant Darts policy as described above violates Plaintiff's rights not to be effectively discriminated against by their local government because of their race, as guaranteed by the Illinois Civil Rights Act of 2003, because Dart's policy results in the disproportionate pretrial incarceration of African Americans and the disproportionate refusal to allow African Americans on electronic monitoring.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a)   Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)   Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)   Enter judgment declaring that Defendant Dart's policies and practices described herein as applied to the class violate Illinois Civil Rights Act

d)   Enter a temporary restraining order, preliminary and then permanent injunction prohibiting Defendant Dart from continuing the unconstitutional policies and practices identified herein;

e)   Award Plaintiffs their compensatory damages, reasonable attorneys' fees and costs pursuant 740 ILCS 23/5(c)(2);

f)   Grant such other relief as this Court deems just and proper.

## COUNT V
### (State Law Claim for Violation of 55 ILCS 5/3-6019-6020)

124.     Plaintiffs re-allege paragraphs 1 through 109 as if fully set forth herein.

125.     Defendant, knowing that he had no lawful justification, enacted a policy and practice as described above, whereby he caused a group of individuals to be detained at the Cook County Jail even though their bonds had been posted in defiance of facially valid, binding judicial orders.

126.     Dart is statutorily obligated to enforce all binding court orders and is liable for all damages resulting from the failure to do so.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that Defendant Dart's policies and practices described herein as applied to the class violate Illinois Civil Rights Act

d) Enter a temporary restraining order, preliminary and then permanent injunction prohibiting Defendant Dart from continuing the unconstitutional policies and practices identified herein;

e) Award Plaintiffs their compensatory damages, reasonable attorneys' fees and costs pursuant 55 ILCS 5/3-6020

f) Grant such other relief as this Court deems just and proper.

**Plaintiffs demand a trial by jury on all claims.**

Respectfully submitted,

/s/ Sara A. Garber
*Counsel for Plaintiff*

Sara A. Garber
Thedford Garber Law
53 West Jackson Blvd., Suite 638
Chicago, Illinois 60604
P: 773-288-9304
E: sara@thedfordgarberlaw.com

Adele D. Nicholas
Law Office of Adele D. Nicholas
5707 West Goodman Street
Chicago, Illinois 60630
P: 847-361-3869
E: adele@civilrightschicago.com