IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAPHIA WILLIAMS, GREGORY
COOPER, JOSHUA ATWATER, MARCUS
JOHNSON, XAVIER WEBSTER, and
TONY MASON, Individually and on
Behalf of Those Similarly
Situated,

　　　　　　　　　　Plaintiffs,

　　　　v.

COOK COUNTY and COOK COUNTY
SHERIFF TOM DART,

　　　　　　　　　　Defendants.

Case No. 18 C 1456

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Named Plaintiffs brought this putative class action under 42 U.S.C. § 1983 against Defendant Sheriff Dart, alleging that he unlawfully detained them and other individuals in the Cook County Jail pursuant to an unconstitutional policy after their bond had posted. Before the Court is Sheriff Dart's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) [ECF No. 34]. For the reasons stated herein, the Motion is granted in part and denied in part.

## I. BACKGROUND

The Named Plaintiffs allege that Sheriff Dart unlawfully detained them in the Cook County Jail for several days after state court judges ordered each of them released on electronic monitoring. (2d Am. Compl. ¶¶ 8-11, Dkt. No. 26.) In each of their individual criminal cases, the relevant plaintiff posted the bond required by the judge's order and yet was not released on electronic monitoring. (*Id.* ¶ 10.) Instead, each

Named Plaintiff was detained for a period ranging from three to twelve days after posting bond. According to the allegations, they were so held pursuant to Sheriff Dart's new policy. (2d Am. Compl. ¶¶ 53, 61, 69, 76, 83, 93.)

The Plaintiffs allege that it is Sheriff Dart's new policy to detain individuals after their bonds have posted while the Sheriff conducts his own review of the bond decisions made by Cook County judges. (*Id.* ¶ 8.) According to Plaintiffs, Sheriff Dart's new policy arose from his dissatisfaction with recent bond reform efforts in Cook County which encouraged judges to take into account the financial condition of each defendant and lower the bond amount accordingly. (*Id.* ¶¶ 21-23.) Specifically, Sheriff Dart criticized the increased number of people charged with gun-related offenses being released prior to trial under these reform efforts. (*Id.*) Due to these concerns, Sheriff Dart announced that his office would review bond orders and, based on such review, reject certain individuals from his Electronic Home Monitoring program. (*Id.* ¶¶ 23-25.) Under this new policy, the Sheriff reviewed the Named Plaintiffs' bond orders and rejected them from the Electronic Home Monitoring program, leading to their continued detention in Cook County Jail. (*Id.*¶¶ 47-96) When two of the Named Plaintiffs filed rules to show cause against the Sheriff for continuing to detain them after they posted bond, the Sheriff released them the night before the hearings to moot the issue. (*Id.* ¶¶ 60, 68.)

Plaintiffs now contend that Sheriff Dart has no authority to override the bond decisions of Cook County judges and no authority to refuse to comply with valid bond orders. (*Id.* ¶ 11.) Plaintiffs bring

- 2 -

suit individually and on behalf of all similarly-situated class members, contending that Sheriff Dart violated their rights under the United States Constitution and Illinois law by detaining them after their bonds posted. (*Id.*)

## II.  ANALYSIS

### A.  Standard of Review

Defendants move to dismiss the Second Amended Complaint for failing to state a claim upon which relief may be granted pursuant to Federal Rule 12(b)(6).  FED. R. CIV. P. 12(b)(6).  To survive a 12(b)(6) motion, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration omitted).  On a 12(b)(6) motion, the reviewing court accepts all well-pleaded facts as true, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), and draws reasonable inferences in favor of the plaintiff, *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014) (citation omitted).

### B.  Power of the Court

Before addressing the merits of Defendant's Motion, the Court must contend with two threshold issues which could divest this Court of the power to rule.

#### 1.  Mootness

The Named Plaintiffs in the alleged class have all been released on bond, prompting the Court to ask: Is the suit moot? Article III of

the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Said requirement demands an actual controversy at "all stages of review, not merely at the time the complaint is filed." *Id.* Taphia Williams, one of the Named Plaintiffs, filed her original Complaint seeking to represent a class on February 26, 2018. At the time of filing, Williams was still in detention at Cook County jail, allegedly pursuant to Sheriff Dart's new policy. (Original Compl. ¶ 7, Dkt. No. 1.) This is no longer the case; Ms. Williams has been released from custody. (2d Am. Compl. ¶ 52.) Since February, other Named Plaintiffs have been added to the Complaint, but all of them have since been released. (*Id.* ¶¶ 52, 60, 68, 76, 82, 92.)

These facts do not moot the case. Although the Named Plaintiffs' individual cases are now moot, the class claim for injunctive relief remains. Williams filed for class certification while she was a party to the live controversy — in other words, while she was still in custody. (*See* Dkt. No. 2.) Generally, filing for class certification does not save a cause of action from becoming moot when the named plaintiffs' claims are mooted. *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). However, *Gerstein v. Pugh*, 420 U.S. 103 (1975), announced the "inherently transitory" exception to this general rule. *Olson*, 594 F.3d at 580 (describing *Gerstein*, 420 U.S. at 110 n.11). For this exception to apply, two things must be true: "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the

complaint." *Id.* at 582 (citing *Gerstein*, 420 U.S. at 110 n. 11; *Zurak v. Regan*, 550 F.2d 86, 91-92 (2d Cir. 1977)).

In *Gerstein,* two Florida prisoners brought a class action challenging their pre-trial detention without a reliable judicial determination of probable cause. 420 U.S. at 105-07. The Supreme Court held that "the termination of a class representative's claim did not moot the claims of the unnamed members of the class." *Id.* at 110 n.11. The Court explained that "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures." *Id.*

Like in *Gerstein,* the Named Plaintiffs are no longer in pretrial detention, but the suit is not moot. As to the first element: Given that "[p]retrial detention is by nature temporary," the Named Plaintiffs' claims would be unlikely to remain live long enough to certify the class. *See id.* In fact, the individual Plaintiffs' allegedly unconstitutional detentions ranged from three to twelve days – an inadequate amount of time to certify. (2d Am. Compl. ¶¶ 53, 61, 69, 76, 83, 93.) Thus, the situation here "will run its course faster than courts can usually act to provide complete review on the merits." *Ciarpaglini v. Norwood*, 817 F.3d 541, 547 (7th Cir. 2016). The Plaintiffs also allege the second element: They say that as long as Sheriff Dart practices the policy of independently reviewing state court judges' bond decisions, a constant class of persons will suffer unconstitutional pretrial detentions. (*Id.*

¶¶ 102-103.) The "inherently transitory" exception thus applies here. *See Olson*, 594 F.3d at 584 (applying the exception where inmates challenged procedures at temporary detention center); *Carter v. Doyle*, 95 F. Supp. 2d 851, 857-60 (N.D. Ill. 2000) (applying the inherently transitory exception where juveniles challenged state court procedures in probable cause hearing). Because the case fits within the exception, Plaintiffs' action is not moot.

### 2. *Rooker-Feldman Abstention*

Although no party has challenged it here, the Court must assure itself of its jurisdiction, as in every case. *See Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014). The courts "have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the Constitution." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358-59 (1989). Given the state court bond orders involved in this case, this Court must analyze whether the *Rooker-Feldman* abstention doctrine applies. To determine whether the doctrine applies, the Court must decide "whether the federal claims either 'directly' challenge a state court judgment or are 'inextricably intertwined' with one." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)). The Court concludes *Rooker-Feldman* does not apply.

At first blush, the Seventh Circuit's decision in *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) might suggest a different result, but it is distinguishable from the case at bar. In *Jakupovic,* the defendant was placed under pretrial electronic monitoring in Lake

County. *Id.* at 901. The Lake County Sheriff's Department did not release the defendant, however, because he did not have a Lake County address as the electronic monitoring program required. *Id.* The defendant filed an emergency motion before the trial court, requesting the electronic monitoring condition be lifted because he could not satisfy it. *Id.* The trial court denied the motion, finding that the defendant's inability to meet the conditions of his bond did not merit reconsideration. *Id.* The defendant then filed suit in federal court, but the Seventh Circuit held that *Rooker-Feldman* prevented him from pursuing his claim. *Id.* Although *Jakupovic* involves an electronic home monitoring program, the *Jakupovic* defendant challenged the state court's decision to leave the condition in place, and thus the federal court could not "find that policy unconstitutional without also concluding that the state court's judgments, ordering the same residence requirement and detainment, were unlawful." *Id.* at 904 (citing *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 605 (7th Cir. 2008)). Here, the Plaintiffs seek to *enforce*, not challenge, the judgments of the state trial courts, so the first ground for applying *Rooker-Feldman* is not present.

As for the second ground, the state court bond orders are clearly intertwined with the issues in this case. Yet "the claims are barred under *Rooker-Feldman* only if [Plaintiffs] had a reasonable opportunity to raise the issues in state court proceedings." *Id.* at 904 (citations omitted); *see also Hamilton v. City of New Albany*, 698 F. App'x 821, 827 (7th Cir. 2017). In this case, the *Rooker-Feldman* doctrine does not bar Plaintiffs' claims because the Plaintiffs' entire argument is that they were afforded no due process or reasonable opportunity to raise these

claims in the state court proceedings. *See id.* The Named Plaintiffs allege that Sheriff Dart detained them unilaterally, in contravention of court order, and then released them before the state court had the opportunity to rule on the issue. (*See* 2d. Am. Compl. ¶¶ 60, 68.) Furthermore, even if an individual Plaintiff were successful in going before the state court judge to have his individual bond order enforced, the Sheriff could still apply this allegedly unconstitutional policy to other individuals in the proposed class, rendering the individual Plaintiff's remedy inadequate. *See Gerstein*, 420 U.S. at 110 n. 11.

### C. Sheriff Dart's Motion to Dismiss

With mootness and *Rooker-Feldman* decided, the Court turns to the merits. Plaintiffs allege they were unconstitutionally detained in Cook County jail for three to twelve days apiece after their judicially-determined bonds had posted. (2d Am. Compl. ¶¶ 53, 61, 69, 76, 83, 93.) The Sheriff argues that Plaintiffs fail to state a constitutional claim because the state courts have no authority to place pretrial detainees in the Sheriff's Electronic Home Monitoring program (the "EHM program"). Plaintiff brings three constitutional claims, including: Fourth Amendment [Count I], Equal Protection [Count II], and Substantive Due Process [Count III]. Each will be discussed in turn.

#### 1. Statutory Authority

The main disagreement between the parties is whether the Sheriff was required to place the Named Plaintiffs in his EHM program by virtue of the Plaintiffs' state court bond orders. The Sheriff argues that Illinois courts have no authority to place pretrial detainees in the EHM program without his consent. The Plaintiffs retort that state court

judges have the sole authority to determine a pretrial detainee's bond and the conditions thereto, including electronic home monitoring, and that the Sheriff oversteps his authority by refusing to abide by court orders.

At the outset, the Court notes that this question — whether state courts have the authority to order the Sheriff to place pretrial detainees into the EHM program — is a novel and unsettled question of state law. The Court was neither directed to, nor could find, any Illinois case clearly answering this question. *Cf. People v. Rogers*, 975 N.E.2d 211, 221 (Ill. App. Ct. 2012) (raising, but not deciding, the source of the court's authority for sentencing a defendant to the Sheriff's Day Reporting Program). Faced with such questions, federal courts of appeal may certify them to state supreme courts and are encouraged to do so. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) (citation omitted) ("Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudications is particularly gratuitous when . . . the state courts stand willing to address questions of state law on certification from a federal court."). Unfortunately, this Court does not have the ability to certify questions to the Illinois Supreme Court, as Illinois rules allow such questions only from the United States Supreme Court or the Seventh Circuit. *See* Ill. Sup. Ct. R. 20.

In answering this question, then, the Court has the duty to interpret Illinois statutes as the Illinois Supreme Court would, *see ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012), and to defer to Illinois' rules of statutory

- 9 -

interpretation in doing so, *Pastors Protecting Youth v. Madigan*, 237 F. Supp. 3d 746, 749 (N.D. Ill. 2017).  As the Seventh Circuit explained:

> In Illinois, the primary objective in statutory interpretation is to give effect to the intent of the legislature.  Because the most reliable indicator of the legislature's intent is the language of the statute, the Illinois Supreme Court looks there first, applying the plain, ordinary, and popularly understood meanings of the statute's terms.  The Court looks to the dictionary when necessary to discern the ordinary and popular meanings of words.  In addition to the language of the statute, the Court also considers the purpose behind the law and the evils sought to be remedied, as well as the consequences that would result from construing the law one way or the other.  It assumes that the legislature did not intend absurdity, inconvenience or injustice and looks to legislative history if the need arises.

*Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 732 (7th Cir. 2010) (internal quotation marks and citations omitted); *see also Ill. Dept. of Fin. and Prof. Reg. v. Rodriquez*, 983 N.E.2d 985, 988 (Ill. 2012).

Certainly, the Sheriff must comply with validly-issued orders from state court judges.  *See* 55 ILCS 5/3-6019; *People v. Campa*, 840 N.E.2d 1157, 1170-71 (Ill. 2005).  But it is also true that a court must have a statutory or constitutional basis to issue such orders. *See People v. Stinger*, 317 N.E.2d 340, 342 (Ill. App. Ct. 1974).  The Court's inquiry begins with Illinois law--specifically, the Illinois Bail Act, 725 ILCS Section 5/110-1 *et seq*.

The Illinois Bail Act provides the statutory framework for Illinois courts to release a criminal defendant on bail or recognizance prior to trial. The statute "leave[s] no doubt that the trial court is responsible for setting and modifying bail and releasing a defendant on his or her own recognizance" if appropriate. *Campa*, 840 N.E.2d at 1170; *see also* 725 ILCS 5/109-1(b)(4) ("The judge shall . . . [a]dmit the defendant to

- 10 -

bail in accordance with the provisions of Article 110 of this Code."). Under the Act, the judge is required to impose "the least restrictive conditions or combination of conditions necessary to reasonably assure the appearance of the defendant for further court proceedings and protect the integrity of the judicial proceedings." 725 ILCS 5/110-5(a-5). The Act provides factors for the court to consider in setting bail and conditions of release that "will reasonably assure the appearance of a defendant as required or the safety of . . . the community." 725 ILCS 5/110-5(a). One such condition relevant here is electronic home monitoring. The Bail Act specifically provides for electronic home monitoring for pretrial defendants in two sections:

> *Conditions of release may include, but not be limited to, electronic home monitoring,* curfews, drug counseling, stay-away orders, and in-person reporting.

725 ILCS 5/110-5 (emphasis added).

> (b) *The court may impose other conditions, such as* the following, if the court finds that such conditions are reasonably necessary to assure the defendant's appearance in court, protect the public from the defendant, or prevent the defendant's unlawful interference with the orderly administration of justice:
> [. . .]
>> (14) *Be placed under direct supervision* of the Pretrial Services Agency, Probation Department or Court Services Department **in** *a pretrial bond home supervision capacity with or without the use of an approved electronic monitoring device* subject to Article 8A of Chapter V of the Unified Code of Corrections.

725 ILCS 5/110-10 (emphasis added). The referenced Article 8A codifies electronic monitoring and home detention programs in Illinois. Article 8A allows for individuals charged with or convicted of certain offenses to be placed on an approved electronic monitoring device on home confinement either post-conviction or as a condition of bond pending

trial or appeal. 730 ILCS 5/5-8A-3(a), (f)(1); *Taylor v. Remmers*, No. 01 C 5134, 2002 WL 554520, at *3 (N.D. Ill. Apr. 12, 2002); *see also People v. Rogers*, 975 N.E.2d 211, 221 (Ill. App. Ct. 2012) (describing the electronic home monitoring program in Illinois). Electronic monitoring or home detention is administered "under the terms and conditions established by the 'supervisory authority,'" 730 ILCS 5/5-8A-2(A-20)-(C), which is statutorily defined as "the Department of Corrections, the Department of Juvenile Justice, probation department, *sheriff,* superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising electronic monitoring and home detention," 730 ILCS 5/5-8A-2 (emphasis added). If a defendant is placed in electronic monitoring or home detention, he must remain under home confinement unless given prior approval by the supervising authority. 730 ILCS 5/5-8A-4.

Thus, the Bail Act is clear that courts may impose electronic home monitoring as a condition of bond, yet it fails to specify *whom* shall administer such judicially-imposed monitoring. *See People v. Frank-McCarron*, 934 N.E.2d 76, 87 (Ill. App. Ct. 2010) (citing 725 ILCS 5/110-10(b)(14)) ("A court can order an individual to wear an [Electronic Monitoring Device] as a condition of a bond."). Both parties argue that the statute supports their position.

The Sheriff argues that Plaintiffs have no right to placement in the EHM program by virtue of the state courts' bond orders because state courts have no statutory authority to order such placement. To this end, the Sheriff emphasizes the Act's subsection (b)(14), which authorizes state courts to place a pretrial detainee on "home

supervision" "with or without . . . electronic monitoring" as a condition of bond under the "direct supervision of the Pretrial Services Agency, Probation Department or Court Services Department," all of which are within the Office of the Chief Judge. The Sheriff contends that his absence from that list is dispositive, relying on the rule that "[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 527 (Ill. 1992).

The difficulty with the Sheriff's reading is that subsection (b)(14) concerns "direct supervision," not electronic monitoring. Illinois courts interpreting this subsection have held that the "meaning of home supervision . . . is the inspecting, directing, and evaluating the defendant's compliance with the terms of his bond conditions." *People v. Theodore,* No. 2-14-0277, 2015 WL 1427383, *4 (Ill. App. Ct. Mar. 27, 2015) (unpublished opinion). The three listed agencies are the ones authorized to supervise and evaluate an individual's compliance with their bond conditions, but not necessarily the agencies that actually provide the electronic monitoring. *See id.* Under the statute, "pretrial bond home supervision" may occur "*with or without* the use of an approved electronic monitoring device." 725 ILCS 5/110-10(b)(14) (emphasis added). A court may order any of those three agencies to supervise a defendant on home supervision without any electronic monitoring at all. If the court wishes to add electronic monitoring as a condition to such home supervision, such monitoring is, by statute, governed by Article 8A. *See* 725 ILCS 5/110-10(b)(14) (emphasis added). In short, the Sheriff's argument concerning

section (b)(14) is misplaced. That section does not define which entities actually conduct electronic monitoring, so it cannot be read to limit the court's power to impose orders concerning the same. But if Article 8A does not provide state courts the authority to order the Sheriff to administer electronic monitoring to pretrial detainees, from where do the courts derive that authority?

Plaintiffs fail to point to any statutory authority specifically empowering state courts to order the Sheriff to accept pretrial detainees into the EHM program. In the absence of doing so, Plaintiffs instead contend that only the courts can impose bond and the conditions attached thereto. *See People v. Thomas*, 577 N.E.2d 496, 497-98 (Ill. App. Ct. 1991) (citations omitted) ("The determination of the terms and conditions of probation is a judicial function and courts have no power to delegate a judicial function unless clearly authorized by law to do so."); *see also People v. Smith*, 12 N.E.3d 231, 239 (Ill. App. Ct. 2014) (finding only the trial court is authorized to establish the terms and conditions of defendant's release). Plaintiffs further contend that the Sheriff has no discretion to violate lawful orders. But the cases they cite do not help their cause. Those cases do not establish state courts' power to order the Sheriff to electronically monitor pretrial detainees, but rather merely stand for the proposition that the Sheriff is not *liable* for executing court orders that turn out to be erroneous or improper. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (no liability where sheriff acted on a court order); *Brown v. Zaruba*, No. 10 C 5705, 2016 WL 723056, at *1 (N.D. Ill. Feb. 24, 2016) (same); *Zurita v. City of Chicago*, No. 02 C 3771, 2003 WL 22127588, at *1 (N.D. Ill. Sept. 15,

2003) (same); *Johnson v. City of Chicago*, 711 F. Supp. 1465, 1468 (N.D. Ill. 1989) (same).

As described above, the Court has neither found nor been directed to any statutory language empowering state courts to require the Sheriff, as opposed to other agencies, to administer electronic monitoring. A "court must act within statutory bounds when exercising [its] powers." *People v. Whitfield*, 888 N.E.2d 1166, 1177 (Ill. 2007), *as modified on denial of reh'g* (Apr. 23, 2008); *accord In Interest of Rami M.*, 673 N.E.2d 358, 361 (Ill. App. Ct. 1996). State courts are "not authorized to fashion sentences that do not conform to statutory guidelines," *Whitfield,* 888 N.E.2d at 1172, nor can they "take as [their] own those discretionary powers vested in an executive officer," *People v. Stinger*, 317 N.E.2d 340, 342 (Ill. App. Ct. 1974) (citation omitted). Ostensibly, the Sheriff could legally shut down the EHM program in its entirety. And if the Sheriff can decide to close the program, it seems he may also exclude individual participants. Given the absence of any statutory or other authority, the Court believes the Illinois Supreme Court would find that the Bail Act does not provide state courts with the power to place the Named Plaintiffs in the Sheriff's EHM program.

However, the resolution of this statutory question is not dispositive here. Even if the Sheriff acted lawfully in refusing Plaintiffs admission to the program, it is still questionable whether the Plaintiffs' prolonged detentions were lawful or whether the bond orders required their release. Put another way, even if the Sheriff has authority to refuse admission to his program, that does not necessarily empower him also to refuse to release individuals who have been judged

- 15 -

worthy of, and posted, bond. *See, e.g., Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 515 (7th Cir. 2009) (finding that holding a detainee after he has posted bond may rise to a constitutional violation if the delay is unreasonable); *see also Weichman v. Clarke*, 434 F. App'x 545, 549 (7th Cir. 2011) ("Jail officials must have a legitimate reason for the length of detention after an arrestee has posted bond."); *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004) (holding delay in processing is actionable if unreasonable). The Sheriff's statutory-empowerment arguments do not warrant the dismissal of Plaintiff's claims.

### 2. *Fourth Amendment Violations [Count I]*

Putting the above aside, the Sheriff argues that Count I should be dismissed because no Fourth Amendment violation is present where a finding of probable cause justifies detention. The Sheriff points out that each individual Plaintiff appeared before a state court judge who determined that probable cause existed. This argument is well taken.

The Court believes Plaintiffs' allegations do not fit within the Fourth Amendment, but rather have the hallmarks of substantive due process, which is a claim absent from their Complaint. The crux of the Fourth Amendment is probable cause, *see Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017), but probable cause is not disputed here. Moreover, allegations of unlawful detention at this stage of criminal proceedings fall under the Due Process Clause: "[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, [and] due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause." *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).

- 16 -

True, the Fourth Amendment has some application to the pretrial detention period, but as the Supreme Court makes clear in *Manuel v. City of Joliet,* that application exists only when the probable cause determination is infected in some way, such as when the court relies on falsified evidence to substantiate its probable cause finding. *Manuel*, 137 S. Ct. at 918-19. Here, however, the Plaintiffs do not contend that their probable cause findings were so infected.

Still, Plaintiffs try to shoehorn their allegations into a Fourth Amendment claim. To do so, Plaintiffs cite *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), and cases from this District. These cases are not persuasive. *Harper* impliedly recognizes that a sheriff cannot detain individuals after their bonds have posted, but that decision nowhere mentions the Fourth Amendment. *Id.* at 512. Two of the cited district court cases are inapplicable here: *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014) dealt with a detention prior to a probable cause hearing, and *Rivera v. Sheahan*, No. 97 C 2735, 1998 WL 531875 (N.D. Ill. Aug. 14, 1998) analyzed pretrial detention under the Due Process Clause without mentioning the Fourth Amendment.

As stated above, Plaintiff's allegations do not fit within a Fourth Amendment claim, and the Plaintiffs have not mustered an argument to the contrary. Accordingly, the Complaint does not state a Fourth Amendment claim and Count I is dismissed with prejudice.

### 3. *Equal Protection and the Illinois Civil Rights Act Violations [Counts II and III]*

Plaintiffs also bring an equal protection claim and a state law analog, claiming that the Sheriff's policy disproportionately targets African-Americans by using data including charge, prior arrests, and

- 17 -

neighborhood to determine eligibility for release. (2d Am. Compl. ¶ 117.) The analysis applied in assessing alleged equal protection violations is the same under both the federal and state constitutions, *People v. Perea*, 807 N.E.2d 26, 36 (Ill. App. Ct. 2004), so the Court will address the federal and state claims together.

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. . . . [And t]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Whren v. United States*, 517 U.S. 806, 813 (1996). To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must show that "he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *see also Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) ("The typical equal protection case involves discrimination by race, national origin or sex."). In addition to alleging a discriminatory effect, a plaintiff must allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).

To the first element: The Named Plaintiffs allege that they are African-Americans and thus are members of a protected class. (*See* 2d Am. Compl. ¶ 4.) However, the Plaintiffs have not alleged, as the second and third elements demand, any facts showing that members in an unprotected class with similar criminal histories and charges were treated more favorably under the Sheriff's policy. It is insufficient

that Plaintiffs allege the new policy negatively affects members of a
protected class; they must allege that similarly-situated parties are
treated differently.  *See Jones-El v. Grady*, No. 02 C 125, 2002 WL
32348354, at *4 (W.D. Wis. Apr. 26, 2002) (dismissing equal protection
claim where plaintiff failed to allege facts suggesting similarly-
situated, class members were treated differently); *People v. P.H.*, 582
N.E.2d 700, 710 (Ill. 1991) ("Equal protection is not offended when
dissimilar groups are treated differently.").  This failure alone is
fatal to their claims.  Even if it were not, the Court is skeptical that
Plaintiffs have alleged enough facts to plead discriminatory purpose.
Here, the only facts they rely on are two statements in a *Chicago Tribune*
article:

> [Discussing the effect of bond reform efforts in Cook County:]
>
> Cara Smith, [Sheriff] Dart's chief policy officer, cit[es]
> concerns that gun suspects are sent straight back to the
> city's most violent neighborhoods.
>
>     *    *    *
>
> In addition, the [Sheriff's] office will more thoroughly
> review where those released on monitoring plan to stay out of
> concern that many return to violence-plagued neighborhoods on
> the South and West sides.
>
> Smith said electronic monitoring was never intended for high-
> risk defendants in the first place.

(Ex. B to Compl., Dkt. No. 26-2.)  At the very least, this element would
benefit from additional facts.  To any extent, as discussed above, other
deficiencies are fatal to the Plaintiffs' claims.  As Plaintiffs' failed
to state a *prima facie* case, Counts II and IV are dismissed without
prejudice.

#### 4. *Procedural Due Process Violations [Count IV]*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "A procedural due process claim requires a two-fold analysis. First, we must determine whether the plaintiff was deprived of a protected interest; second, we must determine what process is due." *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (quoting *Pugel v. Bd. of Trustees of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004)).

The Sheriff moves to dismiss the procedural due process claim on two grounds. First, the Sheriff argues that Plaintiffs have no protected interest in one form of detention over another. Second, the Sheriff argues that the Plaintiffs' bond hearings and other state remedies satisfied all procedural due process requirements.

The Sheriff cites no authority for his first proposition. Rather, the U.S. Supreme Court has recognized that pretrial detainees are afforded greater due process protections against transfers to more restrictive confinement settings. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979); *see also Sandin v. Connor*, 515 U.S. 472, 484-85 (1995) (distinguishing the rights of pretrial detainees, as explained in *Bell,* from the rights of the incarcerated prisoners at issue in *Sandin*). However, the Supreme Court and the Seventh Circuit have not ruled on what due process protections are afforded to pretrial detainees under home confinement. On a similar issue, the Seventh Circuit has held that transferring a probationer from home confinement to jail constituted "a

sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty under the *Sandin* doctrine" to trigger due process of the law. *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003). Other circuits have also concluded that there is a protected interest in home confinement over incarceration. *See Ortega v. U.S. Immigration & Customs Enf't*, 737 F.3d 435, 439 (6th Cir. 2013) (finding a "transfer from home confinement to prison confinement . . . amounts to a sufficiently severe change in conditions to implicate due process. . . . [T]he two settings of confinement still amount to significant differences in kind, not degree."); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 890 (1st Cir. 2010) (finding that prisoners had a liberty interest in an electronic supervision program because it "was sufficiently similar to traditional parole . . . to merit protection under the Due Process Clause"). Moreover, a court in this District has found that pretrial detainees have a liberty interest in remaining on home confinement. *Liska v. Dart*, 60 F. Supp. 3d 889, 898-99 (N.D. Ill. 2014) (Castillo, C.J.) Given the foregoing, this Court finds that the Plaintiffs have sufficiently pled a protected interest in securing release to home confinement—as opposed to remaining in detention—after posting bond.

Plaintiffs have established the first element of their Due Process claim. As for the second element — which concerns what process was due but not provided — the Sheriff argues that the Plaintiffs had available to them state law remedies which defeat their claim. He contends that each Plaintiff could petition the Court to seek a modification of bond, *see* 725 ILCS 5/110-6, or file a petition for rule to show cause concerning the Sheriff's refusal to follow allegedly binding orders. As in the

earlier mootness discussion, the Court notes that for the purposes of this analysis, the Court considers not the discrete process due to each individual Plaintiff, but rather the due process owed to the class writ large. This accords with the "inherently transitory" standing exception the Court already found applicable here. As such, the Sheriff's argument fails. Even if an individual Plaintiff were successful in challenging his detention, that success would not protect future class members against similar deprivations.

Furthermore, the Plaintiffs allege that they were afforded no process to challenge the Sheriff's refusal to place them in electronic home monitoring. (2d Am. Compl. ¶¶ 28-30.) To this end, Plaintiffs allege that the Sheriff stymied their efforts to obtain state law remedies by releasing them right before the rule to show cause hearings they noticed up. (*See* 2d Am. Compl. ¶ 60 (releasing Plaintiff Gregory Cooper the night before a rule to show cause hearing); *Id.* ¶ 68 (releasing Plaintiff Tony Mason same).) Plaintiffs have not alleged precisely what process they were due, but it is clear, taking all allegations as true, that Plaintiffs received no process at all. Plaintiffs have thus stated a claim for violation of Procedural Due Process.

Finally, the Court notes the Sheriff's objections that he has limited resources and cannot accept every detainee ordered into his care for electronic monitoring. Though a refusal to transfer a pretrial detainee for "managerial reasons" can sometimes eviscerate Due Process claims, such fact-intensive inquiries are better left for summary judgment. *See Higgs v. Carter*, 286 F.3d 437, 438 (citing *Bell,* 441U.S.

at 535-41) (finding that transferring pretrial detainees for "managerial reasons" negates due process requirements).

### 4. *Count V: Violation of 55 ILCS 5/3-6019-6020*

Though the Sheriff apparently moves to dismiss the case in full, he nowhere advances an argument in favor of dismissing Count V in his memorandum, failing to cite the statute the claim is based on even once. The argument raised in the Defendant's reply failed to give the Plaintiffs an adequate opportunity to respond and thus the argument is waived. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D. Ill. 2012) (citing *Judge v. Quinn*, 612 F.3d 537, 542 (7th Cir. 2010) ("Arguments . . . that could have been raised in the opening brief but are first raised in a reply brief are waived."). Accordingly, Count V remains.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant Sheriff Dart's Motion to Dismiss [ECF No. 34] is granted in part and denied in part. Count I is dismissed with prejudice. Counts II and IV are dismissed without prejudice. Counts III and V remain.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated:  9/13/2018