IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TAPHIA WILLIAMS, GREGORY COOPER, JOSHUA ATWATER, MARCUS JOHNSON, XAVIER WEBSTER, and TONY MASON, individually and on behalf of those similarly situated,** | **Case No. 18 C 1456** |
| **Plaintiffs,** | **Judge Harry D. Leinenweber** |
| **v.** | |
| **COOK COUNTY and COOK COUNTY SHERIFF TOM DART,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

The Named Plaintiffs brought this putative class action under 42 U.S.C. § 1983 against Defendant Cook County Sheriff Tom Dart, alleging that he unlawfully detained them and other individuals in the Cook County Jail pursuant to an unconstitutional policy after their bonds had posted. Before the Court are the following Motions: (1) Sheriff Dart's Motion to Dismiss Plaintiffs' Third Amended Complaint, and (2) Plaintiffs' Motion for Class Certification. For the reasons stated herein, Sheriff Dart's Motion (Dkt. No. 56) is granted in part and denied in part, and Plaintiffs' Motion for Class Certification (Dkt. No. 2) is denied.

# I. BACKGROUND

The Court has already granted in part and denied in part Sheriff Dart's motion to dismiss the Named Plaintiffs' Second Amended Complaint. *See generally Williams v. Cook County*, No. 18 C 1456, 2018 WL 4361946 (N.D. Ill. Sept. 13, 2018). That ruling sets out the facts of this case in detail and the Court need not recite them in full. But to provide a succinct summary: This case arises from Sheriff Tom Dart's refusal to comply with state court orders granting certain incarcerated individuals with pending criminal charges release on electronic monitoring. (Third Am. Compl. ("TAC") ¶¶ 8-11, Dkt. No. 44.) Each of these individuals—the Named Plaintiffs—had their bonds posted in their respective criminal case, as required by the state judges, but was not immediately released thereafter. (TAC ¶ 10.) Instead, Sheriff Dart denied these individuals enrollment in his electronic home monitoring program ("EHM program") and detained them for a period ranging from three to twelve days. (*See generally* TAC ¶¶ 53-120.) The Named Plaintiffs attribute such detention to Sheriff Dart's new policy: independently reviewing state court decisions granting bond and refusing to comply with said decisions if he disagreed with them. (TAC ¶¶ 20-25.)

Plaintiffs contend that Sheriff Dart has no authority to override or to refuse compliance with valid bond decisions by state

judges. (TAC ¶ 11.) They bring suit individually and on behalf of all similarly situated class members, contending that Sheriff Dart violated their rights under the United States Constitution and Illinois law by detaining them after their bonds posted. (*Id.*) Plaintiffs' original Complaint and First Amended Complaint included solely a 42 U.S.C. § 1983 Fourth Amendment claim for unlawful detention. (*See generally* Compl., Dkt. No. 1; First Am. Compl., Dkt. No. 9.) Plaintiffs then moved for a temporary restraining order, which this Court denied on March 6, 2018. (*See* Minute Order, Dkt. No. 15.)

About a month later, on April 12, 2018, Plaintiffs filed their Second Amended Complaint, which included five counts: (1) a § 1983 Fourth Amendment claim; (2) a § 1983 Equal Protection claim; (3) a § 1983 Procedural Due Process claim; (4) an equal protection claim under the Illinois Civil Rights Act of 2003, 740 ILCS 23/5; and (5) a claim for failing to enforce binding court orders under 55 ILCS 5/3-6019-6020. (*See generally* Second Am. Compl., Dkt. No. 26.) On May 17, 2018, Sheriff Dart moved to dismiss Plaintiffs' Second Amended Complaint in its entirety. (Def.'s Mot. to Dismiss, Dkt. No. 34.) In its September 13, 2018, Order ("September Order"), the Court granted in part and denied in part that motion, dismissing Plaintiffs' Fourth Amendment claim with prejudice and both of Plaintiffs' equal protection claims without prejudice. *See*

*Williams*, 2018 WL 4361946. The Court denied Sheriff Dart's motion as to the Procedural Due Process claim and the claim under 55 ILCS 5/3-6019-6020. (*Id.*)

On October 15, 2018, Plaintiffs filed their Third Amended Complaint, which is now at issue before the Court. (*See generally* TAC.) That Complaint includes five counts: (1) a newly included § 1983 Substantive Due Process claim (Count I); (2) an amended § 1983 Equal Protection claim (Count II); (3) the same § 1983 Procedural Due Process claim (Count III); (4) an amended equal protection claim under the Illinois Civil Rights Act of 2003 (Count IV); and (5) the same claim for failing to enforce binding court orders under 55 ILCS 5/3-6019-6020 (Count V). (*Id.*) Sheriff Dart moves to dismiss the Third Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Plaintiffs move to certify class. Both Motions will be discussed in turn.

As a final note, Sheriff Dart raises new arguments in response to this Court's September Order, requesting that the Court reevaluate some of its prior determinations. Relevant portions of that Order will thus be recited and discussed throughout this Opinion. For sake of clarity and analytical development, the Court will consider first, in reverse order, the two claims that withstood Sheriff Dart's initial motion to dismiss—Counts V and III—before turning to the others.

## II.  ANALYSIS

### A.    Failure to State a Claim

Sheriff Dart moves to dismiss the Third Amended Complaint for failing to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a 12(b)(6) motion, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration omitted).  On a 12(b)(6) motion, the reviewing court accepts all well-pleaded facts as true, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), and draws reasonable inferences in favor of the plaintiff, *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014) (citation omitted).

### 1.  Count V: Illinois Statutory Claim

The relevant provision of 55 ILCS 5/3-6019 states: "Sheriffs shall serve and execute . . . all warrants, process, orders and judgments of every description that may be legally directed or delivered to them." In other words, and as applied to the instant case, Sheriff Dart must comply with valid state court orders. *People v. Campa*, 840 N.E.2d 1157, 1170-71 (Ill. 2005). To issue a

valid order, however, state courts must have jurisdiction, as provided by either a statutory or constitutional basis. *See People v. Stinger*, 317 N.E.2d 340, 342 (Ill. App. Ct. 1974).

This Court's September Order denied Sheriff Dart's motion to dismiss as to Plaintiffs' claim under 55 ILCS 5/3-6019-6020. That ruling, however, did not address the merits of the claim. Instead, Plaintiffs' claim withstood dismissal because Sheriff Dart waived his argument, having raised it in his reply brief without affording Plaintiffs an opportunity to respond to it. *Williams*, 2018 WL 4361946, at *10 (citing *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D. Ill. 2012)). Now Sheriff Dart moves again to dismiss that claim, asserting that this Court's findings in the September Order preclude such a claim.

In that Order, the Court recognized that the question of whether state courts have authority to compel the Sheriff to place pretrial detainees on electronic monitoring was "a novel and unsettled question of state law." *Williams*, 2018 WL 4361946, at *4. After examining the Illinois Bail Act, 725 ILCS 5/110-1 *et seq.*, the Court determined that the Act "is clear that courts may impose electronic home monitoring as a condition of bond, yet it fails to specify *whom* shall administer such judicially-imposed monitoring." *Id.* at *6 (citing *People v. Frank McCarron*, 934 N.E.2d 76, 87 (Ill. App. Ct. 2010)). The parties posed a series of

arguments over the state courts' authority and the Court provided its analysis, which it need not reiterate here. Suffice it to say, this Court concluded that it "believes the Illinois Supreme Court would find that the Bail Act does not provide state courts with the power to place the Named Plaintiffs in the Sheriff's EHM program." *Williams*, 2018 WL 4361946, at *7.

Nevertheless, this Court also found that the statutory question was not dispositive as to the dismissal of Plaintiffs' claims. Instead, the Court stated:

> Even if the Sheriff acted lawfully in refusing Plaintiffs admission to the program, it is still questionable whether the plaintiffs' prolonged detentions were lawful or whether the bond orders required their release. Put another way, even if the Sheriff has authority to refuse admission to his program, that does not necessarily empower him also to refuse to release individuals who have been judged worthy of, and posted, bond. *See*, *e.g.*, *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 515 (7th Cir. 2009) (finding that holding a detainee after he has posted bond may rise to a constitutional violation if the delay is unreasonable); *see also Weichman v. Clarke*, 434 F. App'x 545, 5449 (7th Cir. 2011) ("Jail officials must have a legitimate reason for the length of detention after an arrestee has posted bond."); *Chortek v. City of Milwaukee*, 356 F.3d 740, 747 (7th Cir. 2004) (holding delay in processing is actionable if unreasonable).

*Id.*

The Court now considers whether 55 ILCS 5/3-6019-6020 is the appropriate vehicle to challenge Plaintiffs' prolonged detention. Based on its prior analysis, the Court finds that it is not. That provision provides that Sheriff Dart must comply with valid state

court orders. As the Court already explained, the Bail Act does not grant state courts authority to compel Sheriff Dart to place individuals in his electronic monitoring program. *See id.* To clarify, state courts can still condition releases on home confinement. But they do not have the authority, as far as the Court can tell, to specify whom shall administer the electronic monitoring, whether pretrial services, Sheriff Dart, or some other entity. A pretrial detainees' release then becomes dependent on whether the conditions for bond are met — in this case, whether some entity ultimately provides the electronic monitoring service. As evidenced by Sheriff Dart denying Plaintiffs placement in his EHM program and no other entity providing electronic monitoring services, that condition had not been met in each of Plaintiffs' cases. Therefore, Sheriff Dart's failure to release these individuals, albeit problematic on other grounds, was not in contravention of a valid state court order. Accordingly, Count V is dismissed with prejudice. However, such a finding with regard to 55 ILCS 5/3-6019 is not dispositive of the other constitutional claims Plaintiffs bring.

### 2. Count III: Procedural Due Process Claim

To bring a § 1983 Procedural Due Process claim, Plaintiffs must allege: (1) the deprivation of a protected interest, and (2) insufficient procedural protections surrounding the deprivation.

*Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (citation omitted). In its September Order, the Court found that Plaintiffs adequately stated a § 1983 Procedural Due Process claim to withstand 12(b)(6) dismissal. Sheriff Dart now moves the Court to reconsider that ruling and dismiss the claim.

In its prior ruling, the Court noted that "the Supreme Court and the Seventh Circuit have not ruled on what due process protections are afforded to pretrial detainees under home confinement." *Williams*, 2018 WL 4361946, at *9. That is still the case. Nevertheless, this Court considered and relied on related precedent that spoke to the transfer of a probationer or pretrial detainee from home confinement to jail. *See Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003) (finding that transferring a probationer from home confinement to jail constituted a "sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty" to trigger due process of the law); *Liska v. Dart*, 60 F. Supp. 3d 889, 898-99 (N.D. Ill. 2014) (Castillo, C.J.) (finding that pretrial detainees have a liberty interest in remaining on home confinement); *see also Ortega v. U.S. Immigration & Customs Enf't*, 737 F.3d 435, 439 (6th Cir. 2013) (finding a "transfer of home confinement to prison confinement . . . amounts to a sufficiently severe change in conditions to implicate due process.. . . [T]he two settings of

confinement still amount to significant differences in kind, not degree."); *Gonzalez v. Molina*, 607 F.3d 864, 890 (1st Cir. 2010) (finding that prisoners had a liberty interest in an electronic supervision program because it "was sufficiently similar to traditional parole . . . to merit protection under the Due Process Clause"). These cases all found a protected interest in home confinement over incarceration. By extension, the Court found Plaintiffs "sufficiently pled a protected interest in securing release to home confinement—as opposed to remaining in detention— after posting bond." *Williams*, 2018 WL 4361946, at *9.

Sheriff Dart argues, however, that these cases are all distinguishable from the instant case because Plaintiffs were not originally pretrial detainees placed under home confinement nor did they experience a transfer from home confinement to jail. As such, Plaintiffs allegedly never experienced a "reduction in freedom" to merit due process scrutiny.

The facts of the above-cited cases are indeed distinguishable from the instant case, as Sheriff Dart asserts. But the Court was aware of these distinctions at the time the Court issued its September Order and finds no reason to change course now. To elaborate, the state courts granted Plaintiffs release on home confinement after Plaintiffs' bonds had been posted. Sheriff Dart, pursuant to his alleged policy, conducted an independent

evaluation of the state courts' orders and determined that he would not provide Plaintiffs such relief. Sheriff Dart's subsequent denial of that relief and continued detention of Plaintiffs, independent from the courts' orders and without an opportunity for Plaintiffs to challenge that determination, constituted a "reduction of freedom" for present purposes. *Paige*, 341 F.3d at 643. The fact that Plaintiffs were not first physically placed on home confinement and then transferred back into custody makes little difference. In both instances, the pretrial detainee was afforded relief to a less restrictive setting that was ultimately taken away.

There are instances for which such a reduction of freedom is necessary. For example, this Court previously emphasized that whether Sheriff Dart denied release on electronic monitoring for "managerial reasons" can potentially eviscerate Due Process claims. *See Higgs v. Carter*, 286 F.3d 437, 438 (7th Cir. 2002) (finding that transferring pretrial detainee for "managerial reasons" negates due process requirements). But such fact-intensive inquiries are better left for summary judgment. At this stage, the Court must only determine if Plaintiffs have pled the deprivation of a protected interest and insufficient procedural protections surrounding that deprivation. *Leavell*, 600 F.3d at 804. The Court finds that Plaintiffs have met this burden.

Accordingly, Plaintiffs' § 1983 Procedural Due Process claim passes muster.

### 3. Count I: Substantive Due Process Claim

Plaintiffs have amended their Complaint to include a § 1983 Substantive Due Process claim, asserting that Sheriff Dart's policy resulted in Plaintiffs' "unwarranted bodily restraint" and a violation of "Plaintiffs' rights to be free from unwarranted government intrusions on their fundamental liberty interests." (TAC ¶ 136.) In its September Order, this Court dismissed Plaintiffs' Fourth Amendment claim, but suggested that Plaintiffs' allegations "have the hallmarks of substantive due process." *Williams*, 2018 WL 4361946, at *7. Upon closer examination, however, the Court finds that it was mistaken.

The Supreme Court has concluded that substantive due process is applicable only when the government deprives a person of a "fundamental" right. *See Washington v. Glucksberg*, 521 U.S. 702, 719-23 (1997). That protection is also limited "to cases involving abuse of government power so arbitrary and oppressive that it shocks the conscience." *Catinella v. County of Cook, Ill.*, 881 F.3d 514, 519 (7th Cir. 2018) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)). In other words, that protection applies only in cases involving "conduct intended to injure in some way unjustifiable by any government interest." *Lewis,* 523

U.S. at 854; *see also Catinella,* 881 F.3d at 514. With regard to the specific facts of this case, the Illinois Bail Act recognizes a right to bail. 725 ILCS 5/110-4. But that right is not absolute; the Act places limitations for when that right may be granted. *See*, *e.g.*, 725 ILCS 5/110-5 ("Upon depositing this sum and bond fee authorized by law, the person shall be released from custody *subject to the conditions of the bail bond.*") (emphasis added). As such, finding that a substantive due process violation occurred carries a high burden.

Here, state courts granted Plaintiffs release subject to posting bond and being placed on home confinement. The state court determined that those restrictions, particularly placement on home confinement, were appropriate given the nature and seriousness of Plaintiffs' offenses. However, this Court recognized that state courts likely do not have the authority to compel Sheriff Dart to place individuals in his electronic monitoring program. *See Williams*, 2018 WL 4361946, at *7. Because Sheriff Dart has the discretion to deny individuals placement in that program, his ultimate decision to do so was not arbitrary or capricious, nor one that ultimately shocks the conscience. *Catinella*, 881 F.3d at 519. The Court recognizes that this conclusion presents a challenge for Illinois state courts judges and defendants seeking to enforce a state court order requiring release on electronic home

monitoring. Ultimately, this is a problem better suited for the Illinois legislature.

Sheriff Dart's subsequent denial of release and prolonged detention of these individuals after their bonds had posted also does not meet the rigorous substantive due process standard. As previously explained, Plaintiffs' release was conditioned upon placement in home confinement. While Plaintiffs satisfied all conditions within their control, that final condition of home confinement had not been met. Any interest to be free from such detention is thus a non-fundamental right. *See Dawson v. Brd. of Cnty. Comm'rs of Jefferson Cnty.*, 732 Fed. Appx. 624, 630 (10th Cir. 2018) (finding that the plaintiff's "interest to be free from pretrial detention, having fulfilled the court ordered release conditions within his control and awaiting the fulfillment of court ordered release conditions outside of his control, is a non-fundamental right"), *cert. denied sub nom*. No. 18-177, 2019 WL 113094 (U.S. Jan. 7, 2019). Moreover, there are circumstances for which such detention is warranted. *See Carlson v. Landon*, 342 U.S. 524, 545 (1952) (finding that the "refusal of bail [was] not an abuse of power, arbitrary or capricious, and . . . the delegation of discretion to the Attorney General [who reached the ultimate bail determination was] not unconstitutional"). Assuming every possible inference in Plaintiffs favor, Sheriff Dart's policy and

ultimate decision to prolong Plaintiffs detention, albeit unfair and perhaps unreasonable in certain circumstances, does not shock the conscience.  Any violation that might occur therefrom is more appropriately considered under a Procedural Due Process theory.  Accordingly, Plaintiffs' § 1983 Substantive Due Process Claim is dismissed with prejudice.

### 4. *Counts II and IV: Equal Protection Claims*

The Court next considers Plaintiffs' § 1983 Equal Protection claim (Count II) and a state law analog—a claim under the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 (Count IV). Plaintiffs allege that the Sheriff's policy disproportionately targets African Americans by using data including "charge, prior arrests, and neighborhood to determine eligibility for release." (TAC ¶ 139.) Both equal protection claims require the same analysis, *People v. Perea*, 807 N.E.2d 26, 36 (Ill. App. Ct. 2004), so the Court will consider them together.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a

'fundamental right.'" *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). To establish a prima facie case of discrimination under the Equal Protection Clause, the plaintiff must show that "he is a member of a protected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). In addition to alleging a discriminatory effect, the plaintiff must allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).

Sheriff Dart argues that the two equal protection claims should be dismissed because they fail adequately to address the deficiencies this Court raised in its September Order. In that Order, the Court recognized that Plaintiffs—all African Americans—were indeed members of a protected class, satisfying the first element. However, the Court determined that Plaintiffs failed to provide "any facts showing that members in an unprotected class with similar criminal histories and charges were treated more favorable under the Sheriff's policy." *Williams*, 2018 WL 4361946, at *8. Moreover, the Court was "skeptical that Plaintiffs [had] alleged enough facts to plead discriminatory purpose." *Id.*

Plaintiffs' Third Amended Complaint provides the following paragraphs to support their equal protection claims:

> 1. On February 28, 2018, Cara Smith, Sheriff Dart's Chief Policy Officer, made a statement to the Chicago

Tribune that suggested Dart's policy was motivated in part by the race of the detainees who were ordered released on electronic monitoring. In particular, Smith raised concerns about individuals charged with "gun cases" who come from Chicago's "most violent neighborhoods." (*See* Ex. B to TAC, Dkt. No 44.)

2. This echoed sentiments Smith previously expressed to the media, including a statement to the *Chicago Tribune* on February 26, 2018, in which she indicated that "the office will more thoroughly review" the bonds of people ordered to be released on electronic monitoring to the "violence-plagued neighborhoods on the South and West sides."

3. Sheriff Dart's statement that people from the South and West sides of Chicago—primarily African Americans—are to be the most closely scrutinized indicates that Dart's policy of refusing to release certain detainees is motivated by racial bias and racist assumptions about the likelihood that people from primarily African American neighborhoods pose a public safety risk or are likely to reoffend.

4. Publicly available documents obtained after the filing of the lawsuit make clear that Dart disproportionately targeted African Americans with this policy.

5. Recently obtained documents show that more than 80 individuals were detained pursuant to Dart's policy and that over 80 percent of those detained were African American.

6. Notably, African Americans make up only 30 percent of the population of Chicago.

7. On information and belief, numerous individuals of other races or ethnicities who were similarly situated to the Plaintiffs, who posted bond or otherwise satisfied their conditions of release, were not

detained pursuant to Dart's policy and were allowed to be placed on electronic monitoring.

8. Dart's policy unconstitutionally targeted African Americans by using criteria such as number of prior arrests, neighborhood of residence, and current pending charge, to determine who would be detained and who would not be detained.

9. These criteria were intended to and did in fact disproportionately target African Americans.

10. According to the January 13, 2017, Department of Justice report, for example, African Americans have been disproportionately targeted for decades by the Chicago police department and have been subjected to disproportionately higher rates of stops, searches, arrest, and use of force.

11. In making an assumption about one's dangerousness based on their charges or the neighborhood they come from (which in Chicago are divided along racial lines), Dart is playing judge and jury, a disturbing overstep of his powers as Sheriff.

(TAC ¶¶ 38-48.) The Court notes that six of these eleven paragraphs—1, 2, 3, 8, 9, and 11—were included in the Second Amended Complaint, which the Court ultimately found was insufficient in stating an equal protection claim. Taking a closer look at the additional five paragraphs individually, the Court finds that Plaintiffs still have not met their burden. Paragraph 4 is a conclusory statement without reference to the specific "publicly available documents." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (finding that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). In

paragraphs 5 and 6, Plaintiffs attempt to demonstrate discriminatory purpose, but ultimately assert facts irrelevant to the instant case. Paragraph 6 alleges that African Americans constitute thirty percent of Chicago's population. To show discriminatory purpose, however, Plaintiffs would have to provide the current racial composition of the Cook County Jail, not the City of Chicago. The crux of Plaintiffs' claims is that Sheriff Dart's policy discriminates against African Americans from obtaining home confinement relief, as compared to similarly situated pretrial detainees, not Chicago's population in its entirety. Without that context, paragraph 5 merely asserts that African Americans comprise eighty percent of individuals detained pursuant to Sheriff Dart's policy, which, albeit suspicious at first glance, is insufficient to claim discriminatory purpose.

Paragraph 7 states "[o]n information and belief" before reciting the elements of an equal protection claim. As the Supreme Court has made abundantly clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* Moreover, "[t]he court need not accept as true an allegation in a complaint merely because it states that it is based 'on information and belief.' There must be some reason for believing that the claim is likely to have evidentiary support after further investigation." *Brazil*

*v. Fashion Angels Enterprises*, No. 17-CV-824, 2018 WL 3520841, at
*3 (E.D. Wis. June 29, 2018). The Court is thus left with paragraph
10, which it also finds irrelevant. The Department of Justice
reported that the *Chicago Police Department,* not the Cook County
Sheriff's Office, disproportionately targeted African Americans.
Without more, the Court is left wanting.

Accordingly, Plaintiffs have failed to state a § 1983 Equal
Protection claim and its analog claim under the Illinois Civil
Rights Act. Counts II and IV are therefore dismissed.

### B. Abstention

Sheriff Dart argues that even if Plaintiffs' claims pass
muster under Rule 12(b)(6), this Court should abstain from
exercising its jurisdiction over the claims pursuant to *Younger v.
Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine
counsels that "absent extraordinary circumstances federal courts
should abstain from enjoining ongoing state criminal proceedings."
*Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995). The Court
already addressed abstention in its September Order and determined
that it did not apply. *See Williams*, 2018 WL 4361946, at *3. But
since that time, the Seventh Circuit decided *Courthouse News
Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), which Sheriff
Dart argues warrants the Court's reconsideration.

In *Courthouse News Service* ("*CNS*"), the plaintiff news organization brought a § 1983 First Amendment claim in federal court against the Clerk of the Circuit Court of Cook County, alleging that the Clerk's failure to provide the plaintiff immediate access to electronically filed complaints violated its constitutional rights. *Id.* at 1065. The Clerk, however, requested the federal court to abstain, emphasizing that its refusal to provide such access was pursuant to a General Order from the Chief Judge of the Circuit Court. *Id.* at 1066. The Seventh Circuit ultimately determined that abstention was warranted, explaining that:

> the principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business. The Illinois courts are best positioned to interpret their own orders, which are at the center of this case, and to craft an informed and proper balance between the state courts' legitimate institutional needs and the public's and the media's substantial First Amendment interest in timely access to court filings. It is particularly appropriate for the federal courts to step back in the first instance as the state courts continue to transition to electronic filing . . .

*Id.* at 1074.

*CNS* is distinguishable from the instant case. First, abstention was appropriate in *CNS* to ensure state courts had ample opportunity to get up to speed with their administrative needs—in that case, electronic filing. But no such institutional need is at issue here. Second, here, the state courts issued their orders and

granted Plaintiffs release on the condition of home confinement. As the Court previously iterated, "the Plaintiffs seek to *enforce,* not challenge, the judgments of the state trial courts." *Williams*, 2018 WL 4361946, at *3. Although this Court found that the Bail Act did not authorize the state courts to compel home confinement, it emphasized that such a finding was not dispositive of Plaintiffs' claims. But rather, the issue would become "whether the Plaintiffs' prolonged detentions were lawful or whether the bond orders required their release." *Id.* at *7. To the extent that Plaintiffs claims related to or relied on the validity of those orders, this Court has dismissed them. The instant case pertains to Sheriff Dart's conduct and implementation of his policy. Accordingly, abstention is not warranted, and Plaintiffs' procedural due process claim—the only claim left standing—may proceed.

### C. Class Certification

The Court next considers Plaintiffs' Motion for Class Certification. A party seeking class certification must first show that the putative class meets the four requirements of Federal Rule of Civil Procedure 23(a): "numerosity, typicality, commonality, and adequacy of representation." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). Plaintiffs bear the burden of showing by a preponderance of the evidence that all Rule

23 requirements are satisfied. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). As concluded above, this Court found that only one of Plaintiffs' claims may proceed—Plaintiffs' § 1983 Procedural Due Process claim. Accordingly, the Court will consider whether class certification is appropriate under that basis.

### 1. Numerosity

To satisfy numerosity, Plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs need not show the exact number of class members "as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) (citation omitted). While there is no set number that serves as a bar or requirement to establish numerosity, "a class including more than 40 is generally believed to be sufficient." *Id.*

Here, Plaintiffs assert that the proposed class, at a minimum, includes fifty-five individuals that were detained pursuant to Sheriff Dart's policy. This estimate is based on publicly available documents Plaintiffs obtained through a Freedom of Information Act request. (*See* Exs. C, F, I to TAC, Dkt. No. 44-9.) While the initial group of individuals bringing this lawsuit have been released after such detention, future individuals can be subject to detention pursuant to Sheriff Dart's policy. As a result, the

number of individuals detained, regardless of whether they were ultimately released, will only continue to increase.

Sheriff Dart argues that not all of the individuals Plaintiffs point to have a bond order requiring specifically Sheriff Dart to place the individual in his EHM program. These orders apparently do not specify whether some other entity, such as pretrial services or the probation department, should administer electronic monitoring. Whether the state court orders directed Sheriff Dart specifically to administer the electronic monitoring, however, is beside the point. In all of these instances, the allegations rest on Sheriff Dart's subsequent detention of the proposed class pursuant to his policy. This prolonged detention pursuant to Sheriff Dart's policy is what is at issue, not the state court's exact designation for who should administer the electronic monitoring. Sheriff Dart's argument fails.

Accordingly, Plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a).

### 2. *Commonality & Typicality*

To establish commonality, Plaintiffs must show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality requires "not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution

of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 458 (N.D. Ill. 2009).

It seems to the Court that the following question of law remains that is common to the class: whether prolonged detention of the pretrial detainees after they posted bond, pursuant to Sheriff Dart's policy, is lawful. This question concerns "standardized wrongful conduct by the defendants towards members of the proposed class of pretrial detainees." *Coleman v. County of Kane*, 196 F.R.D. 505, 507 (N.D. Ill. 2000); *see also Corey H. v. Board of Educ. of City of Chicago*, No. 92 C 3409, 2012 WL 2953217, at *7 (N.D. Ill. Jul. 19, 2012) (finding commonality because the plaintiffs "have attacked only systemic failures and district-wide policies that apply to ever member of the certified class"); *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 612-13 (N.D. Ill. 2009) (granting class certification for detainees challenging the Cook County Jail's strip search policy). Therefore, commonality does exist.

The Court, however, cannot say the same for typicality. A named representative's claims are typical of the proposed class if they "arise from the same events or course of conduct that gives

rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). "[T]he typicality requirement is liberally construed." *Gaspar v. Linvate Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

This Court confined the instant case to whether Sheriff Dart's prolonged detention of individuals after they already posted bond was lawful. Here, while all the members of the proposed class were granted bond and then subsequently denied release, the specific facts surrounding each individual detention might warrant a different outcome. In other words, the constitutionality of each individual Plaintiff's detention—namely, whether Sheriff Dart violated his or her procedural due process right—is a question of fact requiring independent analysis and likely resulting in independent and varying outcomes. This is also evidenced by the fact that pursuant to Sheriff Dart's policy, not all individuals granted release on home confinement were subsequently detained or denied immediate placement in Sheriff Dart's EHM program. Rather, Sheriff Dart conducted an independent assessment of the pretrial detainees, which subsequently led to his independent determination to either enroll that detainee in his EHM program or prolong his or her detention. Such a case by case determination will require this Court to conduct a case by case analysis over whether that

individual Plaintiff's prolonged detention was unlawful. Accordingly, Plaintiffs have failed to show typicality.

The Court finds that, given the circumstances, class action is not the appropriate vehicle to adjudicate the claims at bar.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Sheriff Dart's Motion to Dismiss (Dkt. No. 56) is granted in part and denied in part. Plaintiffs' Motion for Class Certification (Dkt. No. 2) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 2/27/2019